No. 24-60428

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

BUSINESS COALITION FOR CLEAN AIR, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

# AIR ALLIANCE HOUSTON'S, TEXAS ENVIRONMENTAL JUSTICE ADVOCACY SERVICES', AND SIERRA CLUB'S MOTION FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENTS

*/s/ Rodrigo G. Cantú*
Rodrigo G. Cantú
Earthjustice
845 Texas Avenue, Suite 200
Houston, Texas 77002
(281) 675-5841
rcantu@earthjustice.org
Seth L. Johnson
Earthjustice
1001 G St., Suite 1000
Washington, D.C. 20001
(202) 667-4500
sjohnson@earthjustice.org

*Counsel for Air Alliance Houston, Sierra Club, and t.e.j.a.s.*

*/s/ Joshua D. Smith*
Joshua D. Smith
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
(415) 977-5560
Joshua.smith@sierraclub.org

*Counsel for Sierra Club*

Filed: September 18, 2024

No. 24-60428

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

BUSINESS COALITION FOR CLEAN AIR, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

---

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Petitioners: Business Coalition for Clean Air; Texas Oil & Gas Association; Texas Chemistry Council.

2. Counsel for Petitioners: Aaron M. Streett, Attorney; Christopher B. Carter, Attorney; Matthew Lynn Kuryla, Attorney, all with Baker Botts, L.L.P.

3. Respondents: United States Environmental Protection Agency; Michael S. Regan, Administrator; Earthea Nance, Regional Administrator, U.S. Environmental Protection Agency.

4. Counsel for Respondents: Merrick Garland, Attorney General; Todd Kim, Assistant Attorney General; Paul Caintic, Attorney; Jeffrey Prieto, Attorney, all with the U.S. Department of Justice.

5. Proposed Intervenors: Air Alliance Houston; Texas Environmental Justice Advocacy Services; Sierra Club.

6. Counsel for Proposed Intervenors Air Alliance Houston and Texas Environmental Justice Advocacy Services: Seth L. Johnson and Rodrigo G. Cantú, both with Earthjustice.

7. Counsel for Proposed Intervenor Sierra Club: Joshua Smith, with Sierra Club.

Respectfully submitted,

*/s/ Rodrigo G. Cantú*
Rodrigo G. Cantú

# AIR ALLIANCE HOUSTON'S, TEXAS ENVIRONMENTAL JUSTICE ADVOCACY SERVICES', AND SIERRA CLUB'S MOTION FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENTS

Pursuant to Federal Rule of Appellate Procedure 15(d) and 5th Cir. R. 15.5, Air Alliance Houston ("Air Alliance"), Texas Environmental Justice Advocacy Services ("t.e.j.a.s."), and Sierra Club (collectively, "Movants") hereby move for leave to intervene in support of Respondents U.S. Environmental Protection Agency ("EPA") in the above captioned challenge to "Clean Air Act Reclassification of the San Antonio, Dallas-Fort Worth, and Houston-Galveston-Brazoria Ozone Nonattainment Areas; Tx," 89 Fed. Reg. 51,829 (June 20, 2024) (the "Final Rule"). Movants have contacted all parties: Business Coalition for Clean Air, Texas Oil & Gas Association, and Texas Chemistry Council (collectively, "Petitioners") have reserved their right to respond. EPA takes no position and will evaluate its need to respond.

## INTRODUCTION

At stake here are Movants' interests in receiving the benefits of the Clean Air Act's ("the Act") carefully crafted structure to improve air quality so that ozone pollution levels comply with health-protective national standards by fixed deadlines. Under that structure, ozone-polluted areas, which include the Dallas, Houston, and San Antonio areas, must march through an escalating series of pollution control planning requirements, in exchange for more time to come into

compliance, until they meet the health standard. Here, Texas failed to timely submit certain State Implementation Plan ("SIP") revisions that were required under the 2015 ozone standard for San Antonio, Dallas-Fort Worth ("DFW"), and the Houston-Galveston Brazoria ("HGB") nonattainment areas. EPA's Final Rule is an important step in addressing that failure and ensuring that Texas complies with the Act by placing public health above all other considerations.

Movants seek to intervene in this case to protect their interests in safe, breathable air in the Houston, Dallas, and San Antonio communities they work in, interests the Act's statutory scheme exists to serve. These communities already shoulder an outsized burden of air pollution. Petitioners' claim would, if successful, severely undermine the Act's structure and thereby harm Movants' concrete interests.

The Movants have protectable organizational interests in upholding the Final Rule. Movants have long histories of pressing Texas and EPA to better control ozone-forming pollution. For example, they routinely engage in public processes for revising SIPs and urge EPA to close loopholes that allow for more air pollution. An adverse ruling here would allow Texas to forego or delay required SIP revisions, and thus, would impair Movants' interests.

No other party adequately represents Movants' interests. Movants and EPA have long disagreed about EPA's legal requirements for implementing ozone

standards. Even in comments in the rulemaking at issue here, Movants disagreed with EPA over the scope of EPA's authority to waive SIP revision requirements when reclassifying nonattainment areas at Texas's request. EPA further has a history of reversing or otherwise weakening positions under pressure of litigation. With these significant disagreements and EPA's demonstrated inconstancy, EPA 'might' not adequately represent Movants' interests, "which is all that the rule requires." *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014). Because this motion to intervene is timely and no other party adequately represents Movants' interests, the Court should grant the motion for intervention.

## BACKGROUND

Texas is attempting to avoid obligations under the Act that are essential to increasing the pace and amount of ozone pollution reduction across the state. Ground-level ozone pollution seriously harms public health and the environment. It causes asthma attacks, emergency room visits, hospitalizations, deaths, and other serious health harms. *Mississippi v. EPA*, 744 F.3d 1334, 1340 (D.C. Cir. 2013); 80 FR 65,292, 65,308/3-09/1 (Oct. 26, 2015). Children, people with lung disease, and older people have heighted vulnerability to the health harms ozone causes, but ozone can affect healthy adults too. *See id*. 65,310/3. Ozone can even harm plants

and entire ecosystems.[1] Ozone pollution forms when nitrogen oxides and volatile organic compounds—themselves, harmful pollutants—react in the presence of sunlight.[2]

At issue is Texas's obligation to submit certain SIP revisions that are required under the Act to promote improved air quality and reductions in ozone in the three named areas. The Act provides that ozone nonattainment areas be classified—from best to worst—as either "marginal", "moderate", "serious", "severe", or "extreme" based on how far out of attainment an area is, with corresponding attainment deadlines.[3]

After San Antonio, Dallas, and Houston failed to meet their marginal area attainment deadlines, EPA reclassified the three areas to Moderate and gave Texas until January 1st, 2023, to submit newly required SIPs. Texas neither submitted those SIPs nor sought to extend any deadline before the submission deadline passed. The Act required EPA to find that Texas failed to make the required submission.[4] That finding requires EPA to promulgate its own Federal

---

[1] EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants at ES-12 to -15 (2020), https://ordspub.epa.gov/ords/eims/eimscomm.getfile?p_download_id=540022.
[2] *Id*. at ES-2*; see also* 40 C.F.R. § 51.100(s) (defining volatile organic compound as "any compound of carbon, excluding [certain compounds], which participates in atmospheric photochemical reactions").
[3] 42 U.S.C. § 7511(a)(1) tbl.1.
[4] 42 U.S.C. § 7410(k)(1)(B).

Implementation Plan ("FIP")[5] while also beginning an 18-month period, after which, sanctions shall apply.[6]

Days before EPA signed its legally required findings, and intending to evade these "potential sanctions and federal implementation plans,"[7] Texas's Governor sought reclassification of the San Antonio, DFW, and HGB ozone nonattainment areas from Moderate to Serious for the 2015 ozone National Ambient Air Quality Standards ("NAAQS"). EPA then published its Finding of Failure to Submit ("FFTS") and commenced a rulemaking to assess what the Act requires Texas to do following the reclassification. EPA concluded that five SIP submission requirements *and* their respective implementation deadlines remain while other SIPs no longer applied.[8]

Movants submitted comments on the rulemaking, expressing support for some of EPA's conclusions but disagreeing with others.[9] In its Final Rule, EPA

[5] 42 U.S.C. at § 7410(c)(1).
[6] 42 U.S.C. at § 7509(a)(4).
[7] *See, e.g.*, Letter from Greg Abbott, Gov., Tex., to Michael S. Regan, Adm'r, EPA (Oct.12, 2023) EPA-R06-OAR-2023-0536-0002.
[8] EPA stated that the five SIP elements that remain required for the Moderate Area Classification are: (1) a 15 percent rate of progress (ROP) plan; (2) contingency measures for failure to achieve RFP, including the 15 percent ROP requirement for Moderate areas; (3) a RACT demonstration; (4) NNSR rules; and (5) a Basic I/M program. *Clean Air Reclassification of the San Antonio, Dallas-Fort Worth, and Houston-Galveston-Brazoria Ozone Nonattainment Areas*; TX 89 Fed. Reg. 5145, 5147 (Jan. 26, 2024).
[9] *See* Exhibit 1 *Comments Regarding EPA's Proposal to Grant Texas Governor's*

reiterated that the five SIP revision requirements remain outstanding after reclassification.[10]

**ARGUMENT**

Movants respectfully request leave to intervene in support of EPA. Air Alliance Houston is a non-profit organization working to reduce public health impacts from air pollution and to advance environmental justice, in Houston, Texas. T.e.j.a.s. is a nonprofit organization that believes all communities and people, regardless of race or socio-economic background, are entitled to live in a clean environment, including the right to breathe clean air. T.e.j.a.s. places a special emphasis on working for the underserved communities along the Houston Ship Channel. Sierra Club's mission is to explore, enjoy, and protect the quality of the environment and public health, and consistently advocates for measures that shield their members from the substantial health, economic, and environmental harms of elevated ozone pollution.

---

*Request to Reclassify San Antonio, Dallas-Fort Worth, and Houston-Galveston Brazoria Nonattainment Area from Moderate to Serious for the 2015 NAAQS* (Docket No. EPA-R06-OAR-2023-0536) submitted by Air Alliance Houston, Texas Environmental Justice Advocacy Services, Sierra Club, and Earthjustice (Feb. 26, 2024) ("Movants' Comments").

[10] *Clean Air Act Reclassification of the San Antonio, Dallas-Forth Worth, and Houston-Galveston-Brazoria Ozone Nonattainment Areas*; *TX*, 89 Fed. Reg. 51, 829 at 51830-31 (June 20, 2024).

## I. MOVANTS SATISFY THE STANDARD FOR INTERVENTION

Under Federal Rule of Appellate Procedure 15(d) and Fifth Circuit Local Rule 15.5, a motion to intervene need only be filed "promptly…but not later than 14 days prior to the due date of the brief of the party supported by the intervenor" and provide "a concise statement of the interest of the moving party and grounds for intervention." Fed. R. App. P. 15(d); 5th Cir. R. 15.5. In determining what constitutes appropriate grounds for intervention, this Circuit has identified "the policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24" as a relevant consideration in resolving intervention questions. *Texas v. United States Dep't of Energy*, 754 F. 2d 550, 551 (5th Cir. 1985).

Federal Rule of Civil Procedure 24 provides that a movant is entitled to intervention as of right if (1) its motion is "timely;" (2) the movant claims an interest relating to the property or the transaction that is the subject of the action; (3) the movant is so situated that disposing of the action as a practical matter may impair or impede the movant's ability to protect its interest; and (4) the movant's interest is not adequately represented by the parties. Fed. R. Civ. P. 24(a)(2). *See also Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). Rule 24 "'is to be liberally construed,' with 'doubts resolved in favor of the proposed intervenor.'" *Entergy Gulf States Louisiana, L.L.C. v. EPA*, 817 F.3d

198, 203 (5th Cir. 2016) (citation omitted). Movants satisfy these four requirements and, thus, this Court should grant this motion because doing so will not prejudice any of the existing parties and because greater justice will be achieved. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). In the alternative, this Court should grant permissive intervention to Movants.

**A. The motion is timely**

This motion is timely. Under Federal Rule of Appellate Procedure 15(d), a motion to intervene must be filed within 30 days after the petition for review is filed. In this case, Petitioners filed their petition for review of the Final Rule on August 19, 2024, meaning that this motion must be filed no later than September 18, 2024. This motion is therefore timely filed and participation in the pending litigation by Movants will not delay the proceedings or prejudice any party because these would be intervenors will file their brief no later than one week after EPA's brief, per this Court's rules. 5th Cir. R. 31.2.

**B. Movants have substantial and legally protectable interests in the Final Rule**

The attached declarations prove that Movants have "direct, substantial, and legally protectable"[11] interests in maintaining the Final Rule for the following reasons: 1.) the Final Rule calls for measures that directly impact the health and

[11] *Texas v. Dep't of Energy*, 754 F. 2d 550, 552 (5th Cir. 1985).

well-being of Movants' members and constituents; 2.) Movants have long worked to secure better protections against ozone-forming pollution, like the one the Final Rule provides; and 3.) The Final Rule will allow for subsequent public processes, at the state and federal level, that Movants will engage to advocate for improved clean air protections.

The Fifth Circuit has stated that "[t]he 'interest' test is primarily . . . a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wal-Mart Stores*, 834 F.3d at 566 n.2 (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)); *see also Brumfield*, 749 F.3d at 344 ("The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group."). This Court has stated that alleging specific harm to members constitutes a "'direct substantial, legally protectable interest.'" *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996) (citations omitted). Movants have direct, substantial, and legally protectable interests in ensuring that Texas remains obligated under the Act to submit SIP revisions pertaining to Moderate nonattainment for the three areas following their reclassification to Serious nonattainment.

First, Movants allege that there will be harmful and deleterious effects to the health of their members and constituents if specific parts of the Final Rule were to

be delayed, vacated, or weakened in any way. The stronger anti-pollution measures the Final Rule requires will help alleviate the air pollution that harms Movants' members and constituents. This Court has stated that alleging specific harm to members constitutes a "'direct substantial, legally protectable interest.'" *Id*.

Air Alliance's staff often call in sick to work on Ozone Action Days because of the elevated ozone levels. They avoid unnecessary exposure to ambient air conditions because of ozone sensitivities, which impacts Air Alliance's ability to carry out its work. Air Alliance's constituents across Houston and rely on Air Alliance, as a source of information on how to protect their health from elevated ozone levels.[12]

T.e.j.a.s's declarant suffers from a respiratory issue that requires the use of an oxygen tank and that is exacerbated by exposure to Houston's poor air quality. Ana Parras checks the ozone reports daily and abstains from venturing outside her home, including taking walks that are essential to her health,  because of her knowledge that dangerous ozone levels worsen her respiratory issues.[13] Vacatur or delay of the Final Rule will harm t.e.j.a.s's constituency along the Houston Ship Channel, which faces disproportionately high levels of toxic air pollution.[14]

---

[12] *See* Exhibit 2 Hadayia Declaration ¶¶ 2-4, 7, 8 and 11.
[13] *See* Exhibit 3 Parras Declaration ¶¶ 7-14, 16, 17.
[14] Ronald White *et. al.*, *Double Jeopardy in Houston: Acute and Chronic Exposures Pose Disproportionate Risks for Marginalized Communities*, UNION

Sierra Club members live, work, and recreate in the Dallas, Houston, and San Antonio areas. Misti O'Quinn lives in the DWF nonattainment area with her children, two of whom have asthma. On poor air quality days, Ms. O'Quinn and her children are unable to exercise or play outdoors, because bad air days make it difficult to breathe without discomfort. [15] Meredith McGuire lives in the San Antonio area and is a Professor Emerita of Anthropology and Sociology at Trinity University.[16] She leads hiking, walking, camping, birdwatching, and stargazing trips around the San Antonio area, including in Eisenhower Park. But when air quality is at its worst, she avoids those activities.[17]

EPA's Final Rule will require pollution reductions that will improve air quality in the three areas, thereby benefiting these Movants' members and their constituents' health. Delaying, vacating, or weakening those pollution reductions will prolong Movants' members' exposure to harmful ozone.

Next, as public interest organizations, Movants' declarations show that they have long worked to secure protection from ozone forming pollutants. The heart of the Final Rule, reducing the deleterious impacts of ozone and precursor pollutants,

OF CONCERNED SCIENTISTS (2016) at 15, https://www.ucsusa.org/sites/default/files/attach/2016/10/ucs-double-jeopardy-in-houston-full-report-2016.pdf; *see also* Exhibit 3 Parras Declaration ¶¶ 3, 8, 12.

[15] *See* Exhibit 4 O'Quinn Declaration ¶8.

[16] *See* Exhibit 5 McGuire Declaration ¶2.

[17] *Id.* ¶¶ 10-11; *see also* Exhibit 6 Blake Declaration ¶¶ 6, 8, 9,14.

is a question of public interest that is included within the Movants' missions and should be judged by a more lenient standard. *See Brumfield*, 749 F.3d at 344 ("The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group."); *see also La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (finding a substantial interest where intervenors "expend significant resources in the recruiting and training of volunteers").

Movants are involved with creating healthy communities across the areas in which they work. From participating in regional air quality meetings and organizing opposition to environmental permits, to disseminating information to overburdened communities about the harms of ozone, Movants participate in numerous administrative and legal actions to encourage pollution reductions. Indeed, Movants commented on the draft version of the Final Rule when it was available for public comment in February of 2024, demonstrating their significant interest in ensuring ozone levels are reduced and air quality across Texas is improved.[18]

Finally, the Final Rule requires Texas to submit SIP revisions (or EPA to prepare FIPs), which will each require public notice and opportunities for Movants

[18] *See* Exhibit 1 Movants' Comments.

to submit comments on the adequacy of the SIP.[19] As the declarations show, these are precisely the type of administrative opportunities that Movants avail themselves of to advance their missions.[20]

An interest is sufficient for purposes of Rule 24 if it is "legally protectable"— that is, "if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Wal-Mart Stores*, 834 F.3d at 566 (quoting *Texas*, 805 F.3d at 659); *see also Diamond v. Charles*, 476 U.S. 54, 75 (1986). Movants' interests are sufficient because they are legally protectable and go beyond a generalized preference that the case come out a certain way.[21] Movants therefore have interests in the pending litigation that are sufficient to support intervention.

### C. If successful, the challenges to the Final Rule would impair Movants' rights

Unless Movants are permitted to intervene, then "disposing of the action

[19] *See* 42 U.S.C. § 7410 (a)(2) which states, "[e]ach implementation plan submitted by a State under this chapter shall be adopted by the State after reasonable notice and public hearing." *See also* 40 C.F.R. § 51.102(a) which states "States must provide notice, provide the opportunity to submit written comments and allow the public the opportunity to request a public hearing" which applies to plans and revisions required by 40 C.F.R. § 51.104(a) and revisions under § 51.104(d).
[20] *See* Exhibit 2 Hadayia Declaration ¶ 9; *see also* Exhibit 3 Parras Declaration. ¶¶ 15-17.
[21] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).

may as a practical matter impair or impede [their] ability to protect [their] interest…" Fed. R. Civ. P. 24(a)(2). "[A] would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at 345 n.2. Moreover the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 345.

Movants satisfy this *minimal* requirement because disposition of the action without their participation would impair their interests described in the previous section. If Petitioners succeed in their challenge, then Texas would not be required to submit certain SIP revisions, nor would Texas be required to abide by their respective implementation deadlines. If SIP revisions are not submitted, then Texas does not need to undergo any rulemaking, which means no notice to the public and no opportunity for the comment submission on the adequacy of SIP revisions.

First, the health of Movants' members and that of their constituents will be harmed because the implementation of the SIPs' anti-pollution planning will be delayed or vacated,[22] and ozone levels will not improve as fast as the Act requires. Such a delay will only exacerbate the health of Movants' members and their constituents.

Next, any delay or vacatur of the Final Rule would directly harm and

[22] *See* Exhibit 2 Hadayia Declaration ¶¶ 2, 4-6, 8, 10-11.

undermine the years of administrative and legal work that Movants have invested in advocating for better protections against ozone pollution because the SIP revisions that EPA states remain outstanding are important to reducing ozone-forming pollution.

Finally, any vacatur of the Final Rule would take away administrative opportunities for the Movants to comment on the SIP revisions. In its current form, the Final Rule allows for public participation processes for the SIP elements subsequent to Texas submitting them, precisely the type of processes that Movants have availed themselves of in the past.[23] These are opportunities for Movants to share their expertise with regulators to advance the interests of their respective organizations. It is *definite* that these processes will not happen if Petitioners are successful in their challenge, directly harming Movants' interests.

Movants have met the *minimal* burden of demonstrating that disposition of Petitioners' challenge to the Final Rule will impair or impede Movants' interests and this Court should grant their motion for intervention.

### D. Movants' interests are not adequately represented by the existing parties

Because Movants' interests are not adequately represented, this court should allow its intervention. Under Rule 24, a "movant need not show that the

[23] *Supra* note 19.

representation by existing parties will be, for certain, inadequate." *Brumfield*, 749 F.3d at 345. The "burden of demonstrating inadequate representation is 'minimal.' *Id.* The applicant need only show that representation 'may be' inadequate." *Sierra Club,* 18 F.3d at 1207. Although this Court may presume that a party adequately represents a prospective intervenor's interests when they share the "same ultimate objective," this presumption may be overcome by showing "adversity of interest, collusion, or nonfeasance." *Texas*, 805 F.3d at 662; *see La Union del Pueblo Entero,* 29 F.4th at 308 n.6 ("adversity of interest, collusion, or nonfeasance" is not an exclusive list of ways of overcoming presumption). Even where a would-be intervenor has the same "ultimate objective" as an existing party, the prospective intervenor can establish that representation may be inadequate by demonstrating that its "interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662; *see also Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (cautioning that treating "general alignment" of parties as dispositive is the "wrong legal standard").

Because neither Petitioners nor Respondents have filed substantive briefing, it is not clear whether Movants and EPA share the same ultimate objective in the case, and, thus, Movants have met their minimal burden of demonstrating inadequate representation. As Movants' Comments illustrate, their understanding

of EPA's scope of its authority is different than the agency's. Movants contend that the Act mandates "moderate" nonattainment areas meet certain pollution control requirements, and that such requirements are to be implemented more expeditiously. For example, Movants and EPA disagree about whether EPA should conclude that reclassification supersedes or otherwise obviates the state's obligation to adopt RACM "as expeditiously as practicable," 42 U.S.C. § 7502(c)(1): Movants said no; EPA said yes.[24] Movants and EPA similarly disagreed about the implementation deadline for a required control measure, enhanced inspection and maintenance, with Movants urging an earlier deadline.[25] Thus, given these demonstrated different positions regarding EPA's authority to waive or delay requirements for states to develop plans when areas are reclassified voluntarily, Movants and EPA do not necessarily have the same ultimate objectives here. Movants accordingly cannot rely on EPA to adequately represent their interests.

Even if the Court presumes that Movants and EPA share the same ultimate objective, Movants and EPA have adverse interests, which rebuts the presumption. Movants' "interests diverge from the putative representative's interests in a matter germane to the case," making Movants' interests adverse to EPA's. *Texas*, 805

[24] 89 Fed. Reg. at 5,147; *see also* Exhibit 1 Movants' Comments at pgs. 5-8.
[25] 89 Fed. Reg. at 5,149-50.

F.3d at 662. One divergence is addressed above: Movants' overriding interest is to secure the maximum degree of pollution reduction as soon as possible, whereas EPA claims authority to relax or delay certain requirements.

Another divergence stems from EPA representing the "broad public interest" while Movants have more narrow interests. *John Doe #1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001). EPA balances the impact of its regulation on members of the public, including Texas and regulated industries, and protecting its own institutional interests. As described in previous sections, Movants have narrower interests in protecting the health of their members and constituents; in working to secure better protections from ozone-forming pollution like the Final Rule does; and in engaging public participation processes, at the state and federal level. The differing interests are germane here because this case may implicate both what the Act allows or demands regarding the retainment of pollution control requirements and the timing for implementing such requirements, especially given the history of EPA's approach to voluntary reclassification in Texas, described in Movants' Comments. Because they have narrower interests from EPA regarding pollution control and different relationships with Texas and regulated industry, Movants' approaches to arguments on both subjects will or may differ from EPA's. Indeed, Movants have a longstanding history of disagreement with EPA regarding how it must implement the Act's ozone nonattainment provisions. *E.g.*, *Sierra Club v.*

*EPA*, 21 F.4th 815 (D.C. Cir. 2021); *Downwinders at Risk v. EPA*, No. 18-60290 (5th Cir. filed Apr. 17, 2018) (other petitioners are Sierra Club, t.e.j.a.s., and Air Alliance). In similar situations, this Court has repeatedly recognized that a government entity's broader interests support the conclusion that it may not adequately represent a private group's interests. *See John Doe #1*, 256 F.3d at 381 ("The USDA is a governmental agency that must represent the broad public interest, not just the [animal welfare organization's] concerns."); *Brumfield*, 749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will in fact result in inadequate representation, but surely they might, which is all that the rule requires.").

Finally, given Movants' longstanding disagreements with EPA about how to implement the Act's ozone nonattainment provisions, EPA's interests may prove adverse to Sierra Club's as this case moves forward. Other circuits caution that "it is not realistic to assume that the government agency's position will stay static or unaffected by unanticipated policy shifts." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (cleaned up) (quoting *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998)).

Indeed, such switches are hardly unprecedented. In *Environmental Defense v. Duke Energy Corp.*, the United States declined to seek certiorari from an adverse court of appeals decision, but environmental intervenors petitioned for certiorari

and eventually prevailed on the merits, despite the United States switching sides to align itself with Duke Energy at the certiorari stage. 549 U.S. 561, 582 (2007). In another case, EPA changed positions after briefing was completed, but before oral argument occurred, only to change positions back again later, all of which ultimately benefited Texas. *Env't Comm. of the Fla. Elec. Power Coordinating Grp. v. EPA*, 94 F.4th 77, 87-88 (D.C. Cir. 2024).

Here, EPA tellingly takes "no position" on Movants' motion to intervene: "Its silence on any intent to defend [Movants'] special interests is deafening." *Utah Ass'n*, 255 F.3d at 1256 (cleaned up). Given both EPA's historic disagreement with Movants regarding ozone regulation and the government's history of switching positions, both after court of appeals decisions and during the pendency of cases there, Movants cannot reasonably rely on EPA to adequately represent their interests throughout this matter. *See Crossroads*, 788 F.3d at 314 ("doubtful friends may provide dubious representation"). Even if the Court "cannot say for sure that [EPA's] more extensive interests will in fact result in inadequate representation, … surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 345-46 (cleaned up).

## II. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Alternatively, the Court should allow Movants to intervene permissively because their defense of the Final Rule "shares" common questions of law and fact

with the main action, and the motion is timely and will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed R. Civ. P. 24(b)(1)(B)(3).

To establish a common claim or defense, it is sufficient that "movants seek to defend" the agency's decision. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14 (D.D.C. 2019) (citing *Nuesse v. Camp*, 385 F.2d 694, 704-05 (D.C. Cir. 1967)). Here, Movants intend to offer defensive arguments, many of which will share questions of law and fact with the underlying challenge. Moreover, as detailed above, Movants have a long history of advocating for reductions in ozone and ozone precursors, and, because of their focus on their members' health, the health of their constituents, and concepts of environmental justice, they offer a perspective distinct from EPA's. Because Movants "will contribute a perspective which may not otherwise be represented in this matter," the Court should allow them to intervene permissively. *Humane Soc'y of United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985).

This motion is timely, and Movants' intervention will not unduly delay or prejudice any other party's rights.

## CONCLUSION

For the above reasons, Movants respectfully ask this Court to grant leave to intervene in support of EPA.

Dated: September 18, 2024

Respectfully submitted,

/s/ Rodrigo G. Cantú
Rodrigo G. Cantú
Earthjustice
845 Texas Avenue, Suite 200
Houston, Texas 77002
(281) 675-5841
rcantu@earthjustice.org

Seth L. Johnson
Earthjustice
1001 G St., Suite 1000
Washington, D.C. 20001
(202) 667-4500
sjohnson@earthjustice.org

*Counsel for Air Alliance Houston, Sierra Club, and t.e.j.a.s.*

/s/ Joshua D. Smith
Joshua D. Smith
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
(415) 977-5560
Joshua.smith@sierraclub.org

*Counsel for Sierra Club*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Movants' Motion for Leave to Intervene in Support of Respondents contains 5,189 words in total with 4,719 words in the body of the text and 470 words in the footnotes, as counted by counsel's word processing system, and thus complies with the 5,200-word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using **Microsoft Word for Microsoft 365** using **size 14 Times New Roman** font.

Dated: September 18, 2024 /s/ Rodrigo G. Cantú
Rodrigo G. Cantú

## CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; and (2) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of virus. No paper copies will be filed unless requested by the court in accordance with the 5th Circuit ECF Filing Standards.

Dated: September 18, 2024 /s/ Rodrigo G. Cantú
Rodrigo G. Cantú